UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD GARRISON, Jr.,

                        Plaintiff,

      V.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

**REPORT AND RECOMMENDATION**

08-CV-1005
(GLS/VEB)

## I. INTRODUCTION

In November of 2004, Plaintiff Edward Garrison, Jr. filed an application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since March 1, 2003, due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff commenced this action *pro se* on September 23, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On May 10, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for SSI benefits and DIB on November 29, 2004, alleging disability beginning on March 1, 2003. (T at 79-99).[1] The applications were denied initially on May 12, 2005. (T at 30-35). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T at 36). A hearing was held in Albany, New York on January 22, 2007, before ALJ Thomas P. Zolezzi. (T at 305). Plaintiff, represented by counsel, appeared and testified. (T at 308-339). A further hearing was held in Albany on February 27, 2007, at which time the ALJ took additional testimony from Plaintiff, who appeared with counsel, and also heard testimony from a vocational expert. (T at 342-372). On April 16, 2007, ALJ Zolezzi issued a decision denying Plaintiff's applications for benefits. (T at 10-23). The ALJ's decision became the Commissioner's final decision on July 25, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 3-6).

Plaintiff, acting *pro se*, timely commenced this action on September 23, 2008. (Docket No. 1). The Commissioner interposed an Answer on February 27, 2009. (Docket No. 13). The Commissioner filed a Brief on March 26, 2010. (Docket No. 18). On May 25, 2010, Attorney Michael L. Bonser of the Zappone & Fiore Law Firm, filed a Brief on behalf of Plaintiff. (Docket No. 20). The Brief was dated January 4, 2010, was received by the Clerk of the Court on January 8, 2010, and served on the Commissioner on or before that date. The delay between receipt of Plaintiff's Brief and filing was caused by the fact that his new attorney was not yet admitted to practice before this Court.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that this case be dismissed.

### III. DISCUSSION

**A.   Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

    **1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2005. (T at 12).  The ALJ also found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability, March 1, 2003. (T at 12).  He concluded that Plaintiff had the following impairments considered "severe" under the Act: obesity, right carpal tunnel syndrome post carpal tunnel release, arthritis, herniated nucleus pulposus, depression, and impulse control disorder. (T at 12).

---

substantial gainful activity.

    Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

    Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equalled on of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 15).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform simple, entry level light work with numerous restrictions. (T at 15). He found that Plaintiff was unable to perform any past relevant work. (T at 20). Considering Plaintiff's age (32 on the alleged onset date), education (limited), and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 21). As such, the ALJ concluded that the Plaintiff was not disabled as defined under the Act and was therefore not entitled to benefits. (T at 23).

As noted above, the ALJ's decision became the Commissioner's final decision on July 25, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 3-6).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. He offers three (3) principal arguments in support of this position. First, Plaintiff contends that the ALJ's physical residual functional capacity assessment was flawed. Second, Plaintiff challenges the ALJ's mental residual functional capacity assessment. Third, Plaintiff argues that his former counsel failed to adequately develop the administrative record. This Court will address each argument in turn.

#### a. Physical RFC Assessment

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily,

RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

With regard to physical RFC, the ALJ found that Plaintiff could perform simple, entry level light work with occasional, but not frequent, crawling, crouching or balancing. The ALJ opined that Plaintiff cannot climb ladders, scaffolds, ropes, etc. The ALJ determined that Plaintiff can perform occasional, but not frequent, repetitive gross manipulation of the dominant right hand, but can perform fine manipulation with his right hand. Plaintiff cannot be exposed to concentrated gases, fumes, odors, smoke, dust or poor ventilation. (T at 15).

This Court finds that the ALJ's physical RFC assessment was supported by substantial evidence. When asked for clinical findings regarding motor loss, neurological deficits, organ enlargment or other abnormalities, Dr. Phillip A. Gilly, Plaintiff's treating physician, stated "none noted." (T at 176). Dr. Gilly opined that Plaintiff could occasionally lift 30 pounds and frequently lift up to 20 pounds; could stand/walk for up to 6 hours a day; sit for up to six hours per day; was limited regarding pushing and pulling; but otherwise had no limitations. (T at 177-78). The ALJ gave "considerable weight" to this assessment from

7

Plaintiff's treating physician. (T at 18).

Dr. Allen Carl of Capital Region Orthopaedic Group opined that with respect to SSI, he "would not say that [Plaintiff] couldn't do any work." (T at 270). In fact, while Dr. Carl felt that heavy work would aggravate Plaintiff's condition, he also indicated that inactivity would worsen Plaintiff's problems. (T at 270). Dr. Richard Whipple, a surgeon who performed right carpal tunnel release surgery upon the Plaintiff in November 2002, indicated that Plaintiff was able to return to work shortly thereafter. (T at 149, 150, 154).

Further support for the ALJ's physical RFC assessment is found in the report of Dr. Amelita Balagtas, a consultative examiner. Dr. Balagtas noted generally unremarkable clinical findings and indicated only that Plaintiff would have "some limitations" in activities involving bending, lifting, and prolonged sitting and standing. (T at 136). She also found that Plaintiff would have some limitations with regard to activities involving lifting, carrying, and repetitive motions involving the right hand. (T at 136). The ALJ incorporated these limitations into his findings. (T at 15).

Likewise, a State Agency review consultant reviewed medical evidence and concluded that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk/sit for 6 hours in an 8 hour workday, and had no limitations as to pushing or pulling. (T at 193).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9

(S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of the examining and non-examining State agency medical consultants are supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

Plaintiff's argument appears to be primarily that the ALJ should have afforded more weight to the Plaintiff's testimony concerning his physical limitations. This argument is unavailing.

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and

other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No.

7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that he experiences shortness of breath and pain after climbing stairs. (T at 311-12).  He feels numbness in his legs after five to six miles of driving. (T at 312).  Plaintiff stated that he can only stand or walk for five to ten minutes before experiencing pain. (T at 326).  He testified that he can only sit for five to ten minutes. (T at 326).  Plaintiff stated that he can only lift five to ten pounds. (T at 327).  He has difficulty grasping objects with his right hand. (T at 328).  Plaintiff testified that he does not clean house, do laundry, perform yard work, or make his bed. (T at 331).  He stated that his back pain makes sleeping difficult.  (T at 335).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effect of the symptoms were not entirely credible. (T at 16).  This Court finds that the ALJ's conclusion was supported by substantial evidence.

First, Plaintiff's testimony concerning the extent of his limitations was contradicted by the assessments of his treating providers and the consultative examiner.  For example, Plaintiff testified that he could only stand/walk/or sit for five to ten minutes, but Dr. Gilly (Plaintiff's treating doctor) opined that Plaintiff could occasionally lift 30 pounds and frequently lift up to 20 pounds; could stand/walk for up to 6 hours a day; sit for up to 6 hours per day; and was limited regarding pushing and pulling; but otherwise had no limitations. (T at 177-78).

Second, the treatment notes indicated that Plaintiff performed activities inconsistent with the limitations that he testified to.  For example, Plaintiff was noted to be building a

11

patio for his in-laws in July of 2003. (T at 232). In October of 2003, the progress notes indicated that Plaintiff was making repairs to his trailer. (T at 234). A note from September of 2006 indicated that Plaintiff was planning a vacation trip to Disney World. (T at 295). Plaintiff's testimony concerning his inability to do laundry and clean the house were contradicted by other statements in the record indicating that he could and did perform such activities. (T at 140, 142-43).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision should therefore be upheld.

### b.     Mental RFC Assessment

The ALJ found that Plaintiff was capable of performing simple, entry level work, involving simple decision making, but not complex decision making. The work would need to be low stress, which the ALJ defined as "no planning, no scheduling, no report writing, no supervising and no multi-tasking." Plaintiff would be able to have occasional, but not frequent, interaction with the public or co-workers.  The ALJ determined that Plaintiff could work in proximity to co-workers, but only occasionally in coordination with them. (T at 15).

Plaintiff challenges this assessment, pointing to the findings of the State Agency review consultant.  The consultant considered the impairments listed in §§ 12.04, 12.06, and 12.08, and in each instance found that Plaintiff had a medically determinable impairment that did not precisely satisfy the diagnostic criteria of the listed impairment. (T at 207, 209, 211).  Plaintiff also points to notes from the Columbia County Medical Center, which indicated that he was "distractable, concentration impaired," that his ability to perform calculations was poor, and that he had poor judgment. (T at 192).  The notes also referenced impulsive behavior, interpersonal problems, and inappropriate angry outbursts. (T 193, 194).

This Court finds that the ALJ's mental RFC assessment was supported by substantial evidence. Dr. Annette Payne performed a psychiatric consultative examination and made the following findings: Plaintiff's concentration was mildly impaired, as were his recent and remote memory skills. (T at 181).  Plaintiff's cognitive functioning was in the low-average range and his insight and judgment were described as fair to poor. (T at 181-82).

13

Dr. Payne determined that Plaintiff can follow and understand simple directions and instructions. He can consistently perform simple tasks and can perform simple, rote tasks under supervision. Overall, Dr. Payne found that Plaintiff's psychiatric difficulties were mildly to moderately limiting, with specific problems in the areas of attention, concentration, complex tasks, relating with others, dealing with stress, and learning new tasks. (T at 182). The ALJ afforded these findings great weight and his RFC assessment incorporates the limitations identified by Dr. Payne. (T at 19).

The ALJ's decision to afford such weight to Dr. Payne's assessment was appropriate, in that Dr. Payne's findings were consistent with the treatment notes. The treatment notes from Columbia County Mental Health Center indicated that Plaintiff's mental health improved with treatment. For example, in April of 2003, he was noted to be "reacting in a positive manner" and planning to attend a job fair. (T at 230). In May of that year, improvement was noted with regard to Plaintiff's impulse control. (T at 231). In October of 2003, the notes indicated that Plaintiff was "stable with no aggression toward others." (T at 234). Plaintiff was noted to be less stressed and calm when he was compliant with his medication regimen. (T at 236). Although he experienced occasional setbacks, Plaintiff's ability to control his impulses showed overall fairly steady improvement over the course of time. (T at 244, 248-49).

In addition, contrary to Plaintiff's suggestion, the State Agency review consultant's report actually supports the ALJ's assessment. For example, the consultant opined that Plaintiff was not significantly limited with regard to his ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be

punctual within customary tolerances, and to making simple work-related decisions. (T at 218).

The consultant found Plaintiff moderately (but not markedly) limited as to understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; and working in coordination with or proximity to others. (T at 218).  The consultant found non-significant limitations as to most areas of social interaction and adaptation, with no marked limitations in these areas. (T at 219).  The consultant's overall assessment was that Plaintiff could understand, remember and carry out simple instructions; sustain a reasonable pace; make simple decisions; and respond to change in a low contact setting. (T at 220).  As noted, this finding actually supports the ALJ's mental RFC assessment, which this Court finds should be sustained.

        c.    **Errors of Counsel**

Plaintiff also argues that his former counsel erred by failing to elicit sufficient testimony concerning Plaintiff's psychological and emotional restrictions at the hearing before the ALJ.  In addition, Plaintiff contends that his counsel did not adequately cross-examine the vocational expert.

As a threshold matter, Plaintiff's claim in this regard is limited to a single, summary paragraph at the end of his Brief.  It is unsupported by specific details concerning what additional testimony or cross-examination his former counsel should have addressed or how the development of such matters would have changed the outcome of the proceedings.  The record concerning Plaintiff's mental health issues was fully developed, with numerous treatment notes from the Columbia County Medical Center (T at 189-195, 229-251) and the reports of examining and non-examining psychiatric consultants. (T at

179-183, 204-221). Moreover, Plaintiff's former counsel did cross-examine the vocational expert (T at 364-71) and Plaintiff has not offered any plausible argument to suggest that further questioning would have developed any information likely to change the ultimate result.

In any event, there is a serious question as to whether this claim is even cognizable, given that several courts have concluded that there is no right to effective assistance of counsel in Social Security cases. See, e.g. Johnson v. Barnhart, No. 04 CIV 5574, 2005 WL 2993933, at *3 (S.D.N.Y. Oct. 7, 2005)(citing Bovino v. Comm'r of Soc. Sec., No. 97 Civ. 2496, 1998 WL 812596, at *4 (E.D.N.Y. Apr. 8, 1998)).

Lastly, even if this argument is liberally construed as a claim that the ALJ failed to adequately develop the record, any such claim would fail because, as stated above, the record was throughly developed as to these issues.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the Commissioner's decision in this case, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians and consultative examiner, and afforded Plaintiff's subjective claims of pain and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Court recommends that the Commissioner be GRANTED judgment on the pleadings.

>Respectfully submitted,
>
>Victor E. Bianchini
>United States Magistrate Judge

Dated: June 7, 2010
Syracuse, New York

### V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir.

1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 7, 2010

/s/ Victor E. Bianchini
Victor E. Bianchini
United States Magistrate Judge